UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON SWARTS,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>THE HOME DEPOT, INC.,<br><br>　　　　　Defendant. | Case No. 23-cv-0995-JST<br><br>**ORDER DENYING IN PART AND GRANTING IN PART MOTION TO DISMISS**<br><br>Re: ECF No. 23 |

Before the Court is Defendant The Home Depot, Inc.'s ("Home Depot") motion to dismiss. ECF No. 23. The Court will deny the motion in part and grant it in part.

## I.　BACKGROUND

Home Depot is a home improvement retailer with more than 2,300 stores across North America. ECF No. 17 ¶ 18. It is incorporated in Delaware, and its principal place of business is in Georgia. ECF No. 23 at 14.

Home Depot's website includes an online "chat feature" which allows visitors to have conversations with customer service representatives. ECF No. 17 ¶¶ 17–18. Home Depot records those conversations without providing notice to customers. *Id*. ¶¶ 17, 25–26. Home Depot also contracts with LivePerson, which is a company that provides software to "analyz[e] the data and provid[e] Home Depot [with] customer data metrics related to each conversation." *Id*. ¶ 4. During each conversation, "online traffic occurs between the customer's browser and several liveperson.net subdomains[.]" *Id*. ¶ 6. Additionally, Home Depot discloses customers' "private chat sessions" with Quantum Metric; "provides its customers' chats with adservice.google.com"; and sends "live chat session data" to Twilio. *Id*. ¶¶ 9–10.

Plaintiff Jason Swarts is a citizen and resident of California. *Id*. ¶ 17. On January 30,

2023, Plaintiff filed this putative Class Action Complaint against Home Depot in Santa Clara County Superior Court, alleging that it has been "record[ing] electronic conversation[s] with Plaintiff without [his] knowledge or consent," in violation of the California Invasion of Privacy Act (CIPA), Cal. Penal Code §§ 631, 632, and the Wiretap Act,[1] 18 U.S.C. §§ 2510 *et seq.* ECF No. 1 ¶ 2.

After this case was removed to federal court on March 3, 2023, *see* ECF No. 1, Home Depot moved to dismiss the original complaint. ECF No. 14. On April 25, 2023, Swarts filed a first amended complaint, alleging violations of the CIPA, Cal. Penal Code §§ 631, 632; the Wiretap Act, 18 U.S.C. §§ 2510 *et seq.*; and California's Unfair Competition Law (UCL), Cal Bus. & Prof. Code §§ 17200, *et seq.* ECF No. 17.

Home Depot now moves to dismiss the amended complaint pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 23. It argues that the Court lacks personal jurisdiction over it, and that Swarts's amended complaint fails to state a claim.

## II. JURISDICTION

The Court has federal question jurisdiction over Plaintiff's Wiretap Act claim pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over his state law claims pursuant to 28 U.S.C. § 1367(a).

## III. LEGAL STANDARD

### A. Rule 12(b)(2)

When a defendant objects to the Court's exercise of personal jurisdiction over it under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing that jurisdiction is proper. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). "Where, as here, a motion to dismiss is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 608 (9th Cir. 2010). To make this showing, "the plaintiff need

---

[1] The Wiretap Act was amended by the Electronic Communications Privacy Act (ECPA), and thus the two terms are synonymous. *See NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 942 n.3 (N.D. Cal. 2014). Although Home Depot and Swarts use differing terms to refer to the claim, the Court refers to the third cause of action as the Wiretap Act to avoid any confusion.

only demonstrate facts that if true would support jurisdiction over the defendant." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). The complaint's uncontroverted allegations must be taken as true, and "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

Federal courts recognize two types of personal jurisdiction over a defendant: general and specific. *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017) (citation omitted). "A court with general jurisdiction may hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different [s]tate." *Id.* (emphasis and citation omitted). General jurisdiction arises "when [the defendant's] affiliations with the [s]tate are so 'continuous and systematic' as to render them essentially at home in the forum [s]tate." *Id.* (quoting *Int'l Shoe v. Washington*, 326 U.S. 310, 317 (1945)). Although general jurisdiction might be found elsewhere in an "exceptional case," a corporation is usually "at home" only in its place of incorporation and its principal place of business. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021).

By contrast, specific jurisdiction arises when a defendant's contacts with the forum give rise to the claim in question. *See Daimler AG v. Bauman*, 571 U.S. 117, 188 (2014). "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum [s]tate and is therefore subject to the State's regulation.'" *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

"The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154–55 (9th Cir. 2006) (citing *Fireman's Fund Ins. Co. v. Nat. Bank of Coops.*, 103 F.3d 888, 893 (9th Cir. 1996)). "Where, as here, no federal statute authorizes personal jurisdiction, the district court applies the law of the state in which the court sits." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

Because California's long-arm jurisdictional statute authorizes jurisdiction to the fullest

3

extent permitted by the Constitution, *see* Cal. Code Civ. P. § 410.10, the central question is whether the defendant has "at least 'minimum contacts' with [California] such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" The Ninth Circuit has established a three-part inquiry, referred to as the minimum contacts test, to determine whether a court has specific personal jurisdiction over a defendant:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802. "The plaintiff bears the burden of satisfying the first two prongs of the test." *Id*. If the plaintiff does so, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id*. (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

### B.     Rule 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Factual allegations need not be detailed, but facts must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While this standard is not "akin to a 'probability

requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). In determining whether a plaintiff has met the plausibility requirement, a court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). A plaintiff may "plead[] facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (quoting *Arista Records, LLC v. Doe 3*, 603 F.3d 110, 120 (2d Cir. 2010)).

## IV. DISCUSSION

### A. Personal Jurisdiction

#### 1. General Jurisdiction

Home Depot argues that the Court lacks general jurisdiction because Home Depot neither is incorporated in, nor maintains its headquarters in, California, and this is not an "exceptional case." ECF No. 23 at 14–15. Plaintiff does not respond to this argument, and the Court finds that it does not have general jurisdiction. *See Zellerino v. Roosen*, No. SACV 16-485-JLS, 2016 WL 10988763, at *5 (C.D. Cal. Aug. 22, 2016) ("Zellerino fails to respond to the argument that the Court cannot exercise general personal jurisdiction over either Equifax or Datamyx, thereby conceding the point.").

#### 2. Specific Jurisdiction

Defendant likewise alleges that the Court does not have specific jurisdiction over it. As set forth below, the Court disagrees.

##### a. Purposeful Direction

The first prong of the minimum contact test is often called the "purposeful availment" prong. *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006). The phrase "purposeful availment," however, is often used "in shorthand fashion, to

5

1  include both purposeful availment and purposeful direction." *Schwarzenegger*, 374 F.3d at 802.
2  "A purposeful availment analysis is most often used in suits sounding in contract." *Id.* (citation
3  omitted). "A purposeful direction analysis, on the other hand, is most often used in suits sounding
4  in tort." *Id.* (citation omitted). Because Plaintiff's CIPA and Wiretap Act claims sound in tort,
5  and their UCL claim is derivative of those two claims, the Court applies a purposeful direction
6  analysis. *See S.D. v. Hytto Ltd.*, No. 18-CV-00688-JSW, 2019 WL 8333519, at *3 (N.D. Cal.
7  May 15, 2019) (applying purposeful direction analysis to plaintiffs' Wiretap Act, intrusion upon
8  seclusion, and unjust enrichment claims).

9  In applying a purposeful direction analysis, "[courts] typically inquire whether a defendant
10  'purposefully direct[s] his activities' at the forum state, applying an 'effects' test that focuses on
11  the forum in which the defendant's actions were felt, whether or not the actions themselves
12  occurred within the forum." *Yahoo!*, 433 F.3d at 1206 (citing *Calder v. Jones*, 465 U.S. 783, 789–
13  90 (1984)). The effects test includes three elements: "the defendant allegedly must have (1)
14  committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the
15  defendant knows is likely to be suffered in the forum state." *AMA Multimedia, Ltd. Liab. Co. v.*
16  *Wanat*, 970 F.3d 1201, 1208–09 (9th Cir. 2020) (quoting *Mavrix Photo*, 647 F.3d at 1228).

17  It is undisputed that Home Depot operates its own website and chat function, and thus,
18  Swarts's claims satisfy the first element. A defendant acts intentionally when he acts with "an
19  intent to perform an actual, physical act in the real world, rather than an intent to accomplish a
20  result or consequence of that act." *Schwarzenegger*, 374 F.3d at 806. "[O]perating a passive
21  website, purchasing a domain name and purchasing domain privacy services are all intentional
22  acts." *Will Co., Ltd. v. Lee*, 47 F.4th 917, 922 (9th Cir. 2022) (citing *AMA Multimedia*, 970 F.3d
23  at 1209). With regard to the third element, "[a] defendant causes harm in a particular forum when
24  the 'bad acts' that form the basis of the plaintiff's complaint occur in that forum." *Id.* at 926
25  (quoting *Mavrix Photo*, 647 F.3d at 1231). Here, taking Plaintiff's allegations as true, Home
26  Depot was aware that it was recording its online chat conversations with customers, which could
27  foreseeably cause harm in California. ECF No. 17 ¶¶ 17, 25. The third element is therefore
28  satisfied.

6

The remaining element concerns whether Home Depot expressly aimed its conduct at the forum state. Home Depot argues that "Swarts does not allege if, or how, Home Depot aimed *any* conduct related to its website chat feature at California." ECF No. 23 at 16. It contends that regardless of the location from which users might access Home Depot, there are no allegations that Home Depot targeted that location. *Id.*

"More than two decades ago," the Ninth Circuit "recognized a distinction between 'passive' websites that merely make information available to visitors and 'interactive' websites, where 'users can exchange information with the host computer when the site is interactive.'" *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1091 (9th Cir. 2023) (quoting *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997)). Mere passive operation of a website is insufficient to demonstrate express aiming. *Mavrix Photo*, 647 F.3d at 1229. Rather, "operating even a passive website in conjunction with 'something more'—conduct directly targeting the forum—is sufficient." *Id.* (quoting *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002)). Thus, if all Swarts alleged were Home Depot's passive operation of a customer website, Home Depot's argument would be well-taken.

In *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085 (9th Cir. 2023), however, the Ninth Circuit "squarely addressed the question whether sales of a product to forum residents through an interactive website constitute 'something more' to establish express aiming when there is no evidence that the seller specifically targeted that forum." *Herbal Brands*, 72 F.4th at 1092–93. The Court held that "if a defendant, in its regular course of business, sells a physical product via an interactive website and causes that product to be delivered to the forum, the defendant 'expressly aimed' its conduct at that forum." *Id.* at 1093.[2]

Home Depot urges the Court to reject Swarts's contention that "his chats concerned Home Depot products sold to Swarts at Home Depot retail stores in California," ECF No. 29 at 10 n.3, because the complaint "does not allege that Swarts purchased anything from Home Depot in California . . . ." *Id.* at 10 (emphasis omitted). But Swarts pleads that, while at his home in

---

[2] Home Depot does not address *Herbal Brands* in its reply brief, although the case was decided before the reply brief was filed, and Plaintiffs cited the case in their opposition brief.

7

California, he had "conversations with Home Depot [that] included inquiries related to home improvement products he had purchased, whether those products could be exchanged, and pending orders for products which were available for sale on Defendant's website." ECF No. 17 ¶ 17. Taking the allegations of Swarts's complaint as true, as it must, the Court finds that he sufficiently alleges that Home Depot sold a physical product to him via its interactive website.

Therefore, Swarts has satisfied the express aiming element, and has established that Home Depot purposefully directed its conduct at the forum state.[3]

### b. Arise Out of or Relate to Forum Activities

The second prong of the minimum contacts inquiry considers whether the plaintiff's claims "'arise out of or relate to the defendant's contacts with the forum.'" *Ford Motor Co.*, 141 S. Ct. at 1025 (quoting *Bristol-Myers Squibb Co.*, 582 U.S. at 262). "The first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing." *Id.* at 1026.

Home Depot contends that Swarts's "generic allegations about Home Depot's sales and business contacts in California fail the but-for test because they are too attenuated from Home Depot's alleged recording of Swarts' chats to support personal jurisdiction." ECF No. 29 at 10 n.3. Put differently, Home Depot argues that jurisdiction only attaches if Defendant's forum contact gave rise to the claim at issue. But such a view of the "but-for test" reads the caselaw too narrowly. As *Ford Motor Co.* makes clear, the plaintiff need not establish "a strict causal

---

[3] Home Depot's citations to *Carroll v. J.M. Smucker Co.*, No. C 22-08952 WHA, 2023 WL 4053796 (N.D. Cal. June 15, 2023) and *Mikulsky v. Noom, Inc.*, No. 3:23-CV-00285-H-MSB, 2023 WL 4567096 (S.D. Cal. July 17, 2023) are unhelpful. *See* ECF No. 29 at 8–9. In *Carroll*, the plaintiff contended that features of the defendant's website—including a search dialog box, a hyperlink to submit questions, and a live chat feature—were sufficiently interactive to constitute express aiming at the forum. 2023 WL 4053796, at *3. The court disagreed, noting that such activities "do not amount to a finding that California residents were specifically targeted." *Id.* at *4. Similarly, in *Mikulsky*, the court held that the plaintiff's general allegation that the defendant "[knew] that many users . . . interact[ed] with Noom's website while . . . physically present in California" was not enough to confer specific jurisdiction. 2023 WL 4567096, at *8. Neither case involved a situation in which a plaintiff purchased products from, or for delivery into, the forum state. *Compare* ECF No. 17 ¶ 17 ("As Plaintiff Swarts was remodeling his house during this time, his conversations with Home Depot included inquiries related to home improvement products he had purchased, whether those products could be exchanged, and pending orders for products which were available for sale on Defendant's website.").

relationship between the defendant's in-state activity and the litigation" to satisfy this element. 141 S. Ct. at 1026. Rather, the suit must only "arise out of *or relate to* the defendant's contacts with the forum." *Id.* (emphasis added). At the very least, Swarts's claim that Home Depot recorded online chat conversations concerning products he had purchased without his consent relates to Home Depot's connection with the forum, and that is sufficient for this element to be satisfied.

### c. Fair Play and Substantial Justice

Once the plaintiff satisfies the first two prongs, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King Corp.*, 471 U.S. at 476–78). Home Depot does not contest that this element is satisfied.

Consequently, the Court has personal jurisdiction over Home Depot. It now turns to Home Depot's remaining arguments under Rule 12(b)(6).

**B.  CIPA § 631**

Home Depot argues that Swarts fails to state a § 631(a) claim. ECF No. 23 at 18–21. Swarts responds that Home Depot has violated all four clauses of § 631(a). ECF No. 28 at 27–30. The Court addresses each theory of liability in turn.

Section 631(a) creates four avenues for relief:

> (1) where a person "by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection . . . with any telegraph or telephone wire, line, cable, or instrument";
>
> (2) where a person "willfully and without consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit";
>
> (3) where a person "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained"; and
>
> (4) where a person "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above."

9

*Javier v. Assurance IQ, LLC*, --- F. Supp. 3d ----, No. 20-cv-02860-CRB, 2023 WL 114225, at *4 (N.D. Cal. Jan. 5, 2023) (quoting Cal. Penal Code § 631).

### a. Subsection (a)(1)

Section 631(a)'s first clause prohibits "any person who by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection . . . with any *telegraph or telephone* wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal *telephonic* communication system." Cal. Penal Code § 631 (emphasis added). Thus, by its plain terms, the statute prohibits unauthorized connection with transmissions related to "telegraph or telephone" technologies.

Courts have uniformly interpreted this clause as applying only to communications transmitted over telephones and not those transmitted over the internet. *See Williams v. What If Holdings, LLC*, No. C 22-03780 WHA, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022) (determining "the first clause of Section 631(a) concerns telephonic wiretapping specifically and does not apply to the context of the internet"); *Greenley v. Kochava, Inc.*, No. 22-CV-01327-BAS-AHG, 2023 WL 4833466, at *16 (S.D. Cal. July 27, 2023) (dismissing claim under first clause based on "data collected from smartphone apps").

Swarts alleges only that he "visited Defendant's website" via "his cellular telephone." ECF No. 17 ¶ 17. He argues that "CIPA's plain language envisions broad application to evolving technology and its interpretation should be broadly construed to cover a wide range of privacy concerns." ECF No. 28 at 27. This argument, however, has been consistently rejected by numerous courts, and the Court sees no reason to depart from the plain terms of the statute.

The Court accordingly dismisses Swarts's claim under clause one of § 631(a).

### b. Subsection (a)(2)

Swarts next alleges that Home Depot is liable under the second clause of § 631(a) because it "willfully hired third party LivePerson to data mine its chat transcripts using live chat software[.]" ECF No. 28 at 28. He further alleges that LivePerson listened to his conversations in "real time" without his consent. *Id*. In moving to dismiss, Home Depot argues that a party cannot be liable under the second clause of § 631(a) for eavesdropping or recording its *own*

1   conversations. ECF No. 23 at 18–19.

2         Regardless of what actions Liveperson (as opposed to Home Depot) may have taken, it is
3   established that a party to the communication cannot be liable for recording its own conversations
4   under § 631(a). *See Williams*, 2022 WL 17869275, at *3 (holding "a party to the communication
5   is exempt from liability under CIPA"); *Javier*, 2023 WL 114225, at *4 (stating "if a third party
6   listens in on a conversation between the participants . . . the *third party* is liable under the second
7   prong") (emphasis added). Indeed, Swarts concedes that he "does not allege direct violations by
8   Home Depot, as it is well understood that a party cannot eavesdrop on its own conversation, by
9   axiom." ECF No. 28 at 26 n.10. Thus, Home Depot cannot be liable under clause two of
10  § 631(a).

      **c.**      **Subsection (a)(3)**

12        A violation under the third clause of § 631(a) is contingent upon a finding of a violation of
13  the first or second clause of § 631(a). *See Martin v. Sephora USA, Inc.*, No. 1:22-cv-01355-JLT-
14  SAB, 2023 WL 2717636, at *11 (E.D. Cal. Mar. 30, 2023). Because Swarts fails to state a claim
15  against Home Depot under either the first or second clause of § 631(a), his claim for violations of
16  § 631(a) under the third clause necessarily fail as well. *See In re Google Assistant Privacy Litig.*,
17  457 F. Supp. 3d 797, 827 (N.D. Cal. 2020) ("Plaintiffs must establish that the information at issue
18  . . . was obtained through a violation of the first or second clauses. Because Plaintiffs have not
19  done so, they have also failed to plead a violation of the third clause.").

      **d.**      **Subsection (a)(4)**

21        This leaves Swarts's theory remaining based on the fourth clause. A party may be held
22  vicariously liable under the fourth clause of § 631 where it "aids, agrees with, employs, or
23  conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the
24  acts or things" prohibited in the first three clauses. Cal. Penal Code § 631. Home Depot argues
25  that Swarts's claims must be dismissed because the third parties utilized by Home Depot were
26  only a "tool" used to record the conversations, and therefore do not fall within the meaning of
27  § 631(a). ECF No. 29 at 15–16. In addition, Home Depot avers that Swarts "offers no factual
28  support" for his assertion that "LivePerson or other third parties are listening in real time." *Id.* at

11

14.

Understanding Home Depot's argument that LivePerson, and other third parties, are merely tools "supplying [recorded] information back to Defendant" requires a brief explanation of two cases that have shaped § 631 jurisprudence. ECF No. 23 at 20. In *Rogers v. Ulrich*, Ulrich used a tape-recording device to record a conversation with Rogers without his knowledge or consent. 52 Cal. App. 3d 894, 897 (1975). In holding for Ulrich, the court looked to the Legislature's intent in passing CIPA and noted that "it speaks of preventing eavesdropping . . . thus suggesting that participant recording was not meant to be included." *Id.* at 899. In turn, the court reasoned that "[i]t is never a secret to one party to a conversation that the other party is listening to a conversation; only a third party can listen secretly to a private conversation." *Id.*

In *Ribas v. Clark*, after Ribas and his wife finalized their divorce settlement, the wife asked her friend, Clark, to listen in on a conversation with her former husband via an extension. 38 Cal. 3d 355, 358 (1985). In determining that the friend's actions violated § 631, the California Supreme Court reasoned that "a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device." *Id.* at 361. The Court specifically held that "such secret monitoring denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of his statements." *Id*.

Following the *Ribas* and *Rogers* distinction, the determinative question for courts is whether the third parties at issue are "more akin to the tape recorder in Rogers," "or [to] the friend in *Ribas*." *Javier*, 2023 WL 114225, at *5. As the court stated persuasively in *Javier*, this distinction turns on the "question of whether the third party 'ha[s] the *capability* to use its record of the interaction for any other purpose.'" *Yockey v. Salesforce, Inc*., No. 22-CV-09067-JST, 2023 WL 5519323, at *5 (N.D. Cal. Aug. 25, 2023) (quoting *Javier*, 2023 WL 114225, at *6). Thus, "[i]f [Liveperson] can use its records of the communications for any purpose other than to furnish information relating to those communications to [Home Depot], then it is more like the wife in *Ribas* who allowed Clark to eavesdrop. By contrast, if [Liveperson] "has no independent ability to

12

divulge its recording for any other purpose but for that of" [Home Depot], then it is more like the tape recorder in *Rogers*." *Id.* (citation omitted).

Swarts alleges that LivePerson is a "data mining company" that "uses [] private live chat conversations by analyzing data and providing Home Depot customer data metrics related to each conversation." ECF No. 17 ¶ 4. He pleads that when a customer uses Home Depot's live chat feature, "online traffic occurs between the customer's browser and several liverperson.net subdomains," and "the customer's chat information is sent to liveperson.net." *Id.* ¶¶ 4, 6. In turn, LivePerson "accesses and analyzes the recorded conversation[s] to understand what Home Depot customers want, to increase sales, fix inefficiencies, and improve experiences." *Id.* ¶ 4. Although the bulk of Swarts's allegations are centered on LivePerson, he also briefly mentions that Home Depot "discloses private chat sessions" with Quantum Metric, "provides its customers' data" to Google, and sends "live chat session data" to Twilio. *Id.* ¶¶ 9–10. Nowhere in Swarts's complaint does he allege that LivePerson, or any other third party, can use the information obtained for any other purpose besides relaying it to Home Depot. *See Javier*, 2023 WL 114225, at *6 (denying motion to dismiss § 631 claim where plaintiff alleged that third party software provider "can use that information for other purposes").

The Court also agrees with Home Depot that Swarts fails to allege that LivePerson, or other third parties, "intercepted these communications in transit." ECF No. 29 at 14–15; *see Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1135 (E.D. Cal. 2021) ("liability [arises] when the [party] reads, or attempts to read, a communication that is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within California") (internal quotations omitted). Swarts states that "[d]uring Defendant's live chat sessions, online traffic occurs between the customer's browser and several liveperson.net subdomains[.]" ECF No. 17 ¶ 6. But this statement does not indicate *when* the interception occurs. As Home Depot argues, this allegation does not dispel the notion that LivePerson receives the information "*after* the chat reaches Home Depot." ECF No. 29 at 8 n.5.[4] Courts have found that similarly conclusory allegations fail to

---

[4] Swarts fails to allege how any of the other third parties mentioned in the complaint intercept communications in transit, and thus, his claim regarding interception fails with respect to those

support a claim under § 631(a). *See Licea v. American Eagle Outfitters*, --- F.Supp.3d ----, No. EDCV221702MWFJPR, 2023 WL 2469630, at *9 (C.D. Cal. Mar. 7, 2023) ("Plaintiff does not allege sufficient facts as to *how* and *when* the third party receives the communications. Plaintiffs must provide more than conclusory allegations that messages were intercepted "during transmission and in real time.") (emphasis added); *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) ("While Plaintiffs need not prove their theory of interception on a motion to dismiss, Plaintiffs must provide fair notice to Defendants of when they believe [Defendant] intercepts their communications.")

Because the third parties are more akin to the tape recorder in *Rogers*, and because Swarts does not adequately allege interception within the meaning of the statute, Swarts's claims pursuant to clause four of § 631(a) must be dismissed at this stage.

### C. CIPA § 632

Section 632 provides that '(a) every person who, without the consent of all parties to a communication, intercepts or receives and intentionally records . . . a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone . . . shall be punished by fine . . . or by imprisonment.'" Cal. Penal Code § 632.

"A communication is confidential under Section 632 if a party 'has an objectively reasonable expectation that the conversation is not being overheard or recorded.'" *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1073 (N.D. Cal. 2021) (quoting *Flanagan v. Flanagan*, 27 Cal. 4th 766, 776–77 (2002)). "California appeals courts have generally found that Internet-based communications are not 'confidential' within the meaning of [S]ection 632, because such communications can easily be shared by, for instance, the recipient(s) of the communications." *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) (collecting cases). As a result, courts "have developed a presumption" that such communications do not give rise to the

---

third parties as well.

14

requisite expectation. *Revitch v. New Moosejaw, Inc.*, No. 18-cv-06827-VC, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2023).

Home Depot argues that "no reasonable user [of the chat function] could objectively believe that such chats would be confidential." ECF No. 29 at 19–20. Swarts alleges that chat transcripts are "a modern equivalent to telephone conversations with customer service agents," and merit an "expectation of privacy." ECF No. 28 at 21.

The Court is unpersuaded by Swarts's argument that "[t]he statute envisions evolving technology, [and] new ways companies may invade consumer privacy 'communications' . . . ." ECF No. 28 at 22. A plain reading of the text itself makes clear that the statute only applies to communications transmitted by telephone, not internet. Furthermore, Swarts's claim that consumers "cannot be expected to know" that chat conversations with customer service agents are generally recorded is objectively unreasonable. ECF No. 28 at 25. Swarts attempts to bolster his argument by pointing to *In re Meta Pixel Healthcare Litig.*, --- F.Supp.3d ----, No. 22-cv-05380-WHO, 2022 WL 17869218, at *14 (N.D. Cal. Dec. 22, 2022), where the court found that users of a website that collected healthcare information had an expectation of privacy as to those communications. But that case concerned "[c]ommunications made in the context of a patient-medical provider relationship," which is a "readily distinguishable" relationship from that of a Home Depot customer conversing with a customer service agent. *In re Meta Pixel Healthcare Litig.*, 2022 WL 17869218, at *14; *see Yockey*, 2023 WL 5519323, at *6.

Accordingly, Swarts fails to state a § 632 claim.

**D.     Wiretap Act**

Swarts's third claim is based upon a violation of the Wiretap Act. The Wiretap Act provides for civil penalties against any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a). "The analysis for a violation of CIPA is the same as that under the federal Wiretap Act." *NovelPoster*, 140 F. Supp. 3d at 954. Because Swarts is unable to allege that Home Depot intercepted the communications in transit under the CIPA, he is also unable to allege a violation of the Wiretap Act.

15

### E. UCL

Swarts's final claim alleges a violation of California's Unfair Competition Law. To bring a UCL claim, a person must have "suffered injury in fact and . . . lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. Thus, a UCL plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011) (emphasis in original).

Home Depot argues that Swarts does not allege any economic loss, and states only that his "right to privacy is being infringed." ECF No. 23 at 25. Swarts counters that he has UCL standing because he "only seeks injunctive relief and need not satisfy the UCL's requirements for seeking restitution." ECF No. 28 at 10. The sole case Swarts cites in support of this position is *White v. Trans Union, LLC*, 462 F. Supp. 2d 1079 (C.D. Cal. 2006). The Court finds this reliance misplaced. The *White* court held that the plaintiff need not demonstrate that the defendant directly took money from him in order to establish standing to sue for injunctive relief under the UCL. *Id.* at 1083. As another court explained:

> White does not stand for the proposition that a UCL plaintiff need not show he has suffered injury in fact to demonstrate that he has standing to sue for injunctive relief. Rather, it simply recognizes that a plaintiff need not allege that the defendant directly took money from him—i.e., allege recoverable restitution—in order to allege a loss of money or property sufficient to confer standing to sue for a UCL violation.

*Bontrager v. Showmark Media LLC*, No. CV 14-01144 MMM-EX, 2014 WL 12600201, at *8 (C.D. Cal. June 20, 2014)

At bottom, Swarts cannot circumvent the requirement that he has lost money or property. Plaintiff cites to *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 636 (N.D. Cal. 2021) to support his position that a loss of personal information can confer standing. However, as another court in this District observed, *Calhoun* rests on four cases that address Article III standing, which is different from standing under the UCL. *See Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 484 n.8 (N.D. Cal. 2021) (disagreeing with *Calhoun*). Numerous courts have held that disclosure of personal

16

information alone does not constitute economic or property loss sufficient to establish UCL standing, unless the plaintiff provides specific allegations regarding the value of the information. *See, e.g.*, *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2017 WL 3727318, at *22 (N.D. Cal. Aug. 30, 2017) (rejecting UCL standing to victims of data breach who had failed to allege specific benefit-of-the-bargain losses or out-of-pocket expenses); *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 714 (N.D. Cal. 2011), *aff'd* 572 F. App'x 494 (9th Cir. 2014) ("A plaintiff's personal information does not constitute property under the UCL.")

The Court finds that Swarts has not alleged that he lost money or property and thus does not have standing to bring his UCL claim.

## CONCLUSION

For the foregoing reasons, Home Depot's motion is denied in part and granted in part. Swarts's UCL claim is dismissed without leave to amend. Swarts's CIPA and Wiretap Act claims are dismissed with leave to amend because Home Depot has not shown that amendment would prejudice Home Depot, is sought in bad faith, would produce an undue delay, or would be futile. *See AmerisourceBergen Corp v. Dialyst West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). Plaintiff may file an amended complaint within twenty-one days of this order solely to cure the deficiencies identified by this order. Failure to file a timely amended complaint will result in dismissal of Swarts's CIPA and Wiretap Act claims with prejudice.

**IT IS SO ORDERED.**

Dated: August 30, 2023

JON S. TIGAR
United States District Judge